UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHEILA MARIE GEORGE,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>        Defendant. | Case No. C15-1089JLR<br><br>ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## I. INTRODUCTION

Plaintiff Sheila Marie George seeks review of the denial of her application for disability insurance and supplemental security income ("SSI") benefits. Ms. George contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical evidence in the record and in failing to develop the record. (Op. Br. (Dkt. # 13) at 1.) As discussed below, the court REVERSES Defendant Commissioner Carolyn W. Colvin's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

On June 20, 2012, Ms. George protectively filed applications for benefits, alleging

ORDER - 1

disability as of June 20, 2012. (Administrative Record ("AR") (Dkt. # 11) at 13.) Ms. George's applications were denied initially and on reconsideration. (*Id.*) After the ALJ conducted a hearing on October 8, 2013, the ALJ issued a decision finding Ms. George not disabled. (AR at 13-30.)

The ALJ utilized the five-step disability evaluation process,[1] and her findings are summarized as follows:

> **Step one**: Ms. George has not engaged in substantial gainful activity since June 20, 2012, the alleged onset date.
>
> **Step two**: Ms. George has the following severe impairments: plantar fasciitis, Dupuytren's contracture, mood disorder (bipolar vs. schizoaffective disorder), anxiety disorder, and personality disorder.
>
> **Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> **Residual functional capacity**: Ms. George can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some additional limitations. Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit about six hours; and stand and/or walk about six hours in an eight-hour day with regular breaks. She can push and pull within these exertional limitations. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance and stoop, and occasionally crouch and crawl. She has unlimited ability to kneel. She can frequently handle and finger with her right dominant hand. She must avoid concentrated exposure to extreme cold, vibration, and hazards. As to her mental residual functional capacity, Ms. George can understand, remember, and carry out simple, routine tasks, and she is capable of superficial interaction with co-workers and the general public.
>
> **Step four**: Ms. George is unable to perform any past relevant work.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

**Step five**: As there are jobs that exist in significant numbers in the national economy that Ms. George can perform, she is not disabled.

(*See* AR at 15-28.) The Appeals Council denied Ms. George's request for review, making the ALJ's decision the Commissioner's final decision. (*See* AR at 1-7.)[3]

### III.   ANALYSIS

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A. Evaluation of the Medical Evidence**

Ms. George argues that the ALJ erred in evaluating the medical evidence in the record. (*See* Op. Br. at 3-11.) The court agrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's

---

[3] The court omits the rest of the procedural history because it is not relevant to the outcome of the case.

ORDER - 3

findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. An examining physician's opinion is entitled to greater weight than the opinion of a non-examining physician. *Id.*

Ms. George argues that the ALJ erred by giving no weight to the opinions of examining psychologists Jessica Misner, Psy.D., and Wayne Dees, Psy.D. (*See* Op. Br. at 3-11.) Dr. Misner examined Ms. George on October 8, 2012, and diagnosed her with likely schizoaffective disorder, depressive type, and likely posttraumatic stress disorder. (*See* AR at 462-64.) Dr. Misner opined that Ms. George would need "significant support and direction in her daily living" due to her impairments and that it was more probable than not that "she would not be successful in a work place at any time in the near future." (AR at 464.) Dr. Dees examined Ms. George on July 26, 2013, and diagnosed her with

ORDER - 4

bipolar 1 disorder, posttraumatic stress disorder, cognitive disorder not otherwise specified, and personality disorder not otherwise specified. (*See* AR at 777-81.) Dr. Dees opined that Ms. George would be severely limited in her ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, set realistic goals and plan independently, complete a normal workday and workweek without interruptions from psychologically-based symptoms, adapt to changes in a routine work setting, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. (*See* AR at 779-80.)

The ALJ dismissed both of these opinions for the same reason—the examinations were premised on Ms. George's self-reports, which the ALJ found not to be reliable. (*See* AR at 25.) Instead, the ALJ relied on the opinions of non-examining state agency consultants in assessing Ms. George's psychological functional capacity. (*See* AR at 26.) However, the ALJ's reason for rejecting the opinions of the examining psychologists is not supported by substantial evidence.

According to the Ninth Circuit, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does

ORDER - 5

not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Therefore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

Here, both Dr. Misner and Dr. Dees included Ms. George's self-reports in their evaluation reports. (*See* AR at 462-63, 777-78.) However, "[a] patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted). Dr. Misner and Dr. Dees each reported Ms. George's subjective complaints, but each also performed an objective Mental Status Examination ("MSE"). (*See* AR at 463-64, 780-81.)

The MSE is conducted by medical professionals skilled and experienced in psychology and mental health. "[E]xperienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion, and communication of these observations." Paula T. Trzepacz & Robert W. Baker, *The Psychiatric Mental Status Examination* 3 (1993). "Like the physical examination, the Mental Status Examination is termed the *objective*

ORDER - 6

portion of the patient evaluation." *Id.* at 4 (emphasis in original). Although "anyone can have a conversation with a patient, ... appropriate knowledge, vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" *Id.* at 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect, and personality" (*id.* at 4), and in part because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

Dr. Misner and Dr. Dees each performed an MSE and charted results that included impairments in memory, orientation, fund of knowledge, concentration, and judgment. (*See* AR at 463-64, 780-81.) The doctors also observed psychomotor agitation, poor eye contact, slow speech, scattered thoughts, and significantly depressed mood. (*See id.*) Dr. Misner noted that Ms. George was a poor historian but found no evidence of malingering or fictitious behavior and no lack of effort in testing. (*See* AR at 463.) The record shows that the medical opinions of Dr. Misner and Dr. Dees were informed by clinical interviews, reviews of the available medical records, professional observations, objective examinations, and Ms. George's subjective reports. Therefore, the ALJ's finding that the doctors were improperly reliant on Ms. George's self-reports is not supported by substantial evidence. The ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for dismissing the opinions of Dr. Misner and Dr.

ORDER - 7

Dees.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). The Ninth Circuit has noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id*. The court also has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id*. (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, because the ALJ improperly rejected the opinions of Dr. Misner and Dr. Dees in assessing the residual functional capacity ("RFC") and Ms. George was found to be capable of performing work based on that RFC, the error affected the ultimate disability determination and is not harmless.

**B. The ALJ's Duty to Develop the Record**

Ms. George also argues that the ALJ erred by failing to develop the record based on Dr. Misner's recommendation that Ms. George receive a psychiatric evaluation for medication management and a neuropsychological assessment to rule out cognitive difficulties. (*See* Op. Br. at 11-12.) An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). An ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.*

ORDER - 8

*Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Because the ALJ improperly dismissed Dr. Misner's opinion, the ALJ should fulfill this duty to develop the record on remand if the ALJ finds that the evidence regarding Ms. George's psychological functioning is inadequate to determine whether she is disabled.

**C. Remand for Additional Proceedings**

Because the ALJ erred in evaluating the opinions of Dr. Misner and Dr. Dees, the ALJ's RFC assessment does not necessarily completely and accurately describe all of Ms. George's capabilities. Likewise, the hypothetical question presented to the vocational expert did not necessarily completely and accurately describe all of Ms. George's capabilities. Therefore, the ALJ's step-five determination is not supported by substantial evidence and is in error.

The court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is in "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy" that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at

ORDER - 9

1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, issues remain regarding conflicts in the medical evidence, Ms. George's functional capabilities, and her ability to perform other jobs existing in significant numbers in the national economy despite any additional limitations. Accordingly, the court concludes that remand for further consideration is warranted.

## IV. CONCLUSION

For the foregoing reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of March, 2016.

JAMES L. ROBART
United States District Judge

ORDER - 10